IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | § |
| | § Civil Action No. 3:25-cv-00045- LS |
| FOX CAPITAL GROUP INC., a Florida Corporation | § |
| | § |
| *Defendant*. | § |

**DEFENDANT'S RULE 12(B)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant, Fox Capital Group, Inc. ("Fox Capital" or "Defendant"), files Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion to Dismiss") and would show the Court the following:

**I. SUMMARY OF THE MOTION**

Plaintiff, Brandon Callier ("Callier" or "Plaintiff") brings suit against Defendant on the basis that Defendant is "responsible" for alleged unsolicited telemarketing calls made by a third-party called "BizCash and Capital" ("BizCash"). Callier alleges, without evidence, that BizCash is either an assumed name of Defendant or an authorized agent of Defendant for marketing of "merchant cash advances." As a result of the alleged unsolicited telemarketing calls made by BizCash, Callier sues Defendant for purported violations of (1) violations of the Telephone Consumer Protection Act under 47 U.S.C. §227, (2) Tex. Bus. & Com. Code §302.101, and (3) Florida Statute 501.616. Importantly, Callier does not allege that Defendant is directly liable for making any unsolicited telemarketing calls, but rather that Defendant is vicariously liable for the actions of BizCash.

As demonstrated herein, Callier's Complaint must be dismissed because it fails to establish personal jurisdiction over Defendant under either general or specific jurisdictional grounds. Callier does not allege that Defendant made any of the phone calls itself or directed any actions to the state of Texas, but rather rests its theory of liability solely on vicarious liability for the actions of BizCash, which Callier bases on conclusory statements made upon information and belief. As shown by the Affidavit of Shloime Nelken, Defendant never contracted with BizCash or authorized BizCash to make any calls on Defendant's behalf and had no knowledge of any calls allegedly made by BizCash.

However, even if Callier has met the initial burden of establishing personal jurisdiction over the Defendant, Callier's claims fail the applicable pleading standards to allege non-conclusory allegations related to vicarious liability over the actions of BizCash and its purported calls to Callier.

Therefore, as discussed herein, the Court should grant Defendant's Motion to Dismiss and dismiss the Complaint against Defendant.

## II. Summary of the First Amended Complaint and Its Allegations[1]

Callier alleges that, despite being registered on the National Do-Not Call Registry (the "DNC") since December 2007, he received "at least seventeen (17) unauthorized calls" to a personal cell phone from December 18, 2023, through March 11, 2024, "soliciting business funding."[2] Further, Callier alleges that each phone call came from a number displayed as 322-244-3115[3] which he ultimately learned were purportedly from "BizCash."[4] After Mr. Callier had a friend submit an application to "BizCash" requesting

---

[1] Defendant does not stipulate to the facts contained in the First Amended Complaint filed at DN 7, but puts forth the allegations which the Court interprets as true for the purposes of a Motion to Dismiss under 12(b)(6).
[2] DN 7 at ¶¶32-33 and 37. Plaintiff makes inflammatory statements regarding Defendant's business which, while demonstrably untrue, are largely irrelevant to the present case.
[3] According to the North American Numbering Plan Administrator, which is responsible for maintenance of United States area codes, the "322" area code is not presently assigned in the United States as stated on https://secure.nanpa.com/public-report/npa/search-area-codes/section/query. Further, a publicly available search reveals that the "322" area code is presently in use in the Puerto Vallarta area of the United States of Mexico.
[4] DN 7 at ¶¶37-43.

business capital, Callier alleges he received a contract with Defendant's name on it.[5] Callier, therefore, alleges, on information and belief, that BizCash is either an assumed name of Defendant or, alternatively, Defendant's authorized agent for marketing Defendant's products via a "written or verbal agreement."[6] Therefore, Callier pleads that Defendant is vicariously liable for the unknown entity BizCash. The basis for this claim is a series of conclusory statements made in paragraphs 93-104 of the Complaint that Defendant was aware of and approved of the BizCash's alleged actions, despite no evidence to support these claims and no allegations that BizCash ever held themselves out as Defendant's agent or assumed name.[7]

Based upon Callier's conclusory allegations, he seeks relief not against BizCash but against Defendant for Telephone Consumer Protection Act, Texas Business and Commerce Code Chapter 302, and Florida Telephone Solicitation Act violations.

### III. PROCEDURAL BACKGROUND

Callier filed his original complaint on February 18, 2025 (DN-1) and filed a summons returned executed on March 3, 2025 (DN 6).

Thereafter, Callier filed his Amended Complaint (DN-7) on March 13, 2025.

Defendant agreed to execute a waiver of service which set the responsive pleading deadline to May 19, 2025 (DN-8).

### IV. ARGUMENTS & AUTHORITIES AS TO JURISDICTION

As demonstrated herein, Callier has failed to plead adequate facts to demonstrate that this Court holds personal jurisdiction over the Defendant in either the general or specific personal jurisdiction grounds. The exercise of personal jurisdiction over a non-resident defendant is a question of law reviewed de novo.[8] However, any factual findings made by the district court are reviewed only for clear error.[9]

---

[5] DN 7 at ¶¶43-49.
[6] DN 7 at ¶¶51-53.
[7] DN 7 at ¶¶93-104.
[8] *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 528-29 (5th Cir. 2014).

### A. Standards Regarding Personal Jurisdiction

A court lacks personal jurisdiction over a non-resident defendant when the non-resident defendant lacks sufficient minimum contacts with the forum state and maintaining litigation in the forum state against the non-resident defendant would offend traditional notions of fair play and substantial justice.[10] The Due Process Clause of the United State Constitution requires a non-resident defendant to purposefully avail itself to the benefits and protections of the forum state's laws by establishing minimum contacts with the forum state before suit may be brought against the non-resident defendant in that state.[11] The defendant's contacts with the forum state must be sufficient to cause the defendant to reasonably anticipate being hauled into court in the forum state.[12] Due process further requires that exercise of jurisdiction over the Defendant to "not offend traditional notions of fair play and substantial justice."[13]

There are two theories upon which personal jurisdiction may be found: (1) general jurisdiction and (2) specific jurisdiction.[14] General jurisdiction looks to whether the non-resident defendant's contacts with the forum state are systematic and continuous enough to support jurisdiction over the non-resident defendant, regardless of whether or not the contacts relate to the present case.[15] When examining general jurisdiction, courts examine the contacts in total, not in isolation, and the contacts must be substantial, continuous, and systematic to support general jurisdiction.[16]

In contrast, specific jurisdiction looks to whether the plaintiff's cause of action is directly related to the defendant's contacts with forum state.[17] Specific jurisdiction is founded on the defendant's contacts with the forum state itself, and not the plaintiff's contacts with the forum state or the defendant's contacts

---

[9] *Id.*
[10] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).
[11] *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[12] *World-Wide Volkswagen Corp.*, 444 U.S. at 297.
[13] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
[14] *Walden v. Fiore*, 134 S.Ct. 1115, 1121 n.6 (2014).
[15] *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985).
[16] *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).
[17] *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017).

with the plaintiff.[18] The Fifth Circuit has articulated a three-factor test to determine whether there is specific jurisdiction:

1. Whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities to the forum state or purposefully availed itself of the privileges of conducting activities there;
2. Whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
3. Whether the exercise of personal jurisdiction is fair and reasonable.[19]

While a single act can sometimes support specific jurisdiction in a forum state, that single act must be the act giving rise to the cause of action.[20] The Plaintiff has the burden to establish a *prima facie* case as to the first two elements and, only then, does the burden shift to the defendant to show that exercising personal jurisdiction over the defendant would be unfair or unreasonable.[21] When determining if the Plaintiff has met its burden, the court takes as true the nonconclusory, uncontroverted allegations in the plaintiff's complaint and resolves conflicts between the parties submitted affidavits in favor of the plaintiff.[22] If the defendant's affidavits directly contradict the plaintiff's allegations, the Court must then determine if the plaintiff establishes a prima facie case through nonconclusory allegations supported by admissible evidence.[23]

### B. Callier Cannot Establish This Court Has Personal Jurisdiction over Defendant

The United States Supreme Court has previous considered the requirements to establish general jurisdiction and observed that the affiliations of the defendant must be so continuous and systematic as to render the defendant essentially at home in the forum state.[24] The Court furth held that, for a corporation, it

---

[18] *Walden*, 134 S.Ct. at 1122-23.
[19] *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).
[20] *Moncrief Oil Intern., Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007).
[21] *Monkton Ins. Services, Ltd.*, 768 F.3d at 433.
[22] *Callier v. Wide Merchant Investments, Inc.*, 671 F.Supp.3d 736, 741 (W.D. Tex. 2023) citing *Bulkley & Associates, LLC v. Dep't of Industrial Relations, Division of Occupational Safety and Health of the State of California*, 1 F.4th 346, 350 (5th Cir. 2021).
[23] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015).
[24] *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

is "at home" where it is incorporated and where it has a principal place of business and these form the "paradigm bases for jurisdiction."[25] As noted by the 5th Circuit, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[26]

In the present case, Callier seemingly admits the Court lacks general personal jurisdiction over the Defendant.[27] However, to the extent his allegations seek imposition of general jurisdiction, the allegations involve conclusory statements (which are unsupported by his own allegations) that Defendant "purposefully availed itself to the State of Texas" and "continued to intentionally direct phone calls into Texas."[28] In other words, the allegations made by Callier are targeted towards the specific phone calls at issue in this case and, therefore, represent specific jurisdiction allegations. However, even if they would support general jurisdiction, they are directly contradicted by the Affidavit of Shloime Nelken. As stated in the Affidavit of Shloime Nelken, Defendant is a Florida corporation with its principal place of business in Florida.[29] In fact, as demonstrated by the purported contract attached to the Amended Complaint at exhibit B (DN 7-3), Defendant's corporate office is located at 803 S. 21st Ave., Hollywood, FL 33020.[30] Defendant does not maintain an office in Texas nor does it have employees in Texas.[31] Defendant's business contact with Texas is limited to (1) contracting with Texas businesses from Defendant's Florida-based headquarters for contracts which expressly require Florida forums, (2) defending and prosecuting limited litigation in Texas when necessary, and (3) recording UCC-1 Financing Statements related to purchased accounts receivable by Defendant to place third-parties on notice of Defendant's interests.[32] These limited contacts which represent a fraction of Defendant's business are not enough to show that Defendant is "at home" in Texas and, at best, show Defendant conducts some business in the state of

---

[25] *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) citing *Daimler AG*, 571 U.S. at 127.
[26] *Monkton Ins. Services, Ltd.*, 768 F.3d at 432.
[27] *See* DN-7 at ¶6.
[28] *Id.*
[29] Ex. 1 at ¶¶5-6; Ex. 1-A.
[30] *See* DN 7-3 at top of each page after page 1.
[31] Ex. 1 at ¶¶5-6; Ex. 1-A.
[32] Ex. 1 at ¶6.

Texas like it does in most other states in the country. Accordingly, Callier cannot establish that Defendant is subject to the general jurisdiction of this Court.

### C. Callier Fails to Establish a Prima Facie Case for Specific Jurisdiction

Callier's allegations regarding contacts in Texas are limited to purported solicitation calls made by BizCash.[33] In other words, the "contacts" alleged by Callier are all contacts of a third-party, BizCash and, therefore, in order to establish that these minimum contacts can be imputed on Defendant, Callier must show the actions were those of Defendant's agent.[34] As recognized previously by the Western District of Texas, agency relationships can be relevant to specific jurisdiction analysis as a corporation may be found to have "purposefully availed" itself by directing agents or distributors to take action.[35] Therefore, in order to establish specific jurisdiction, Callier must make a prima facie case of vicarious liability between BizCash and Defendant.

As an initial matter, it is unclear if the first prong of the 5th Circuit's specific jurisdiction test, the purposeful availment prong, is even fulfilled here as the alleged contract Callier references in this case was not even directed towards the Plaintiff by his own admission, but rather a non-party.[36] Defendant's admitted contacts with Texas may give rise to specific jurisdiction in another context, but the only "contacts" mentioned here are phone calls by a third-party, BizCash, which therefore requires proof of agency.

Vicarious liability under the Telephone Consumer Protection Act ("TCPA") requires analysis of federal common law of agency.[37] The essential element necessary for an agency relationship is control by

---

[33] DN 7 at ¶¶37-48; Callier's Complaint conflates "Defendant" and "BizCash," mixing the two names together on multiple occasions. However, the factual allegations clearly state that BizCash made the calls. Further, the Affidavit of Shloime Nelken contradicts any allegation that Defendant itself placed any calls.
[34] *Callier v. Wide Merchant Investment, Inc.*, 671 F.Supp.3d 736, 743 (W.D. Tex. 2023).
[35] *Id.* citing *Daimler AG*, 571 U.S. at 135.
[36] DN 7 at ¶¶46-48.
[37] *Callier v. Wide Merchant Investment, Inc.*, 671 F.Supp.3d at 743 citing *Bradley v. DentalPlans.com*, 617 F.Supp.3d 326, 338-39 (D. Maryland 2022).

the principal over the actions of the agent.[38] Agency may be established by showing (1) actual authority, (2) apparent authority, or (3) ratification of actions after the fact.[39] The essential element of agency is control, i.e. the manner and means of the telemarketing campaign, and the Fifth Circuit has previously held that the control level must be high.[40] In the present case, Callier pleads that BizCash, the party responsible for the alleged telephone calls, was either an assumed name of Defendant or was the agent of Defendant through written or verbal authorization to "market Fox Capital Group's merchant cash advances."[41] All of Callier's allegations regarding control are conclusory and, even if not conclusory, are directly contradicted by the Affidavit of Shloime Nelken.[42] Callier makes no non-conclusory allegations to show that Defendant had control over BizCash, nor are there any allegations that: (1) Defendant had interactions with the Plaintiff, (2) BizCash acted on specific, direct instruction of Defendant, (3) Plaintiff was transferred to the Defendant during any call, (4) Defendant contracted Plaintiff if any manner after the calls, or (5) any other allegations that show coordinated efforts between the Defendant and BizCash.[43] As shown by the Affidavit of Shloime Nelken, Defendant (1) has no contractual relationship, written or verbal, with BizCash, (2) has never conducted business with BizCash or the individuals named as employees of BizCash, (3) did not receive the application related to Mr. Delgado mentioned in Paragraph 46 from BizCash, but rather from Unlimited Fundings, LLC, an independent sales organization which submits applications to Defendants and several other companies from time to time, and (4) never had any contract, telephonic or otherwise, with the Plaintiff.[44] Because Defendant had no (1) right to assign BizCash's tasks and (2) control over the means and details of the process by which BizCash accomplished its task, Callier has failed to establish actual authority of Defendant over BizCash sufficient to establish vicarious or agent

---

[38] *Id.*
[39] *See Callier v. SunPath Ltd.*, 2020 WL 10285659 at *3 (W.D. Tex. August 10, 2020).
[40] *Callier v. Wide Merchant Investment, Inc.*, 671 F.Supp.3d at
[41] DN 7 at ¶¶51-53.
[42] DN 7 at ¶¶93-104 compared with Ex. 1 at ¶¶4-12.
[43] *See Callier v. National United Group, LLC*, 2021 WL 5393829 at *6 (W.D. Tex. November 17, 2021) discussing similar cases.
[44] Ex. 1 at ¶¶4-12.

liability for personal jurisdiction.[45]

Callier likewise cannot establish apparent authority to demonstrate an agency relationship between Defendant and BizCash. Apparent authority exists when a third party reasonably believes the agent has authority to act on behalf of the principal and that belief is traceable to the **principal's** manifestations.[46] Further, apparent authority exists where the principal "knowingly permits the agent to exercise authority, or the principal holds the agent out as possessing such authority."[47] Callier does not make any allegations that Defendant ever held out BizCash as having authority to bind it or acting on Defendant's behalf. Further, Callier does not even allege that BizCash ever mentioned Defendant in any of the calls that took place. The only connection that Callier actually pleads with any specificity is the allegation that, upon submitting an application to BizCash's website, Mr. Delgado received an approved contract from the Defendant.[48] Therefore, the only allegations made by Callier are (1) not related to the telephone calls but rather a website interaction, (2) do not involve the Plaintiff, and (3) are contradicted by the Affidavit of Shloime Nelken. Because Callier fails to make any non-conclusory allegations regarding apparent authority, his vicarious liability and agency claims based upon a theory of apparent authority fail.

Finally, Callier fails to plead adequate facts to establish agency via ratification. Ratification is the affirmation by the principal of prior actions of another which gives those actions the effect of having occurred with actual authority.[49] A party may ratify the actions by either failing to object or repudiate the action or by receiving or retaining the benefits it generates.[50] However, a principal may not be bound if a ratification is made without knowledge of material facts involved in the

---

[45] *Callier v. SunPath, Ltd.*, 2020 WL 10285659 at *3 (W.D. Tex. August 10, 2020).
[46] *Callier v. Wide Merchant Investment, Inc.*, 671 F.Supp.3d at 745 citing *Bradley*, 617 F.Supp.3d at 326
[47] *Id.*
[48] DN 7 at ¶¶46-49.
[49] *Callier v. Wide Merchant Investment, Inc.*, 671 F.Supp.3d at 746 citing Restatement (Third) of Agency § 4.01(1) (Am. L. Inst. 2006).
[50] *Id.*

original act when the party was unaware of such lack of knowledge.[51] As alleged by Callier's own Complaint, the only information received by Defendant was an application filled out by Mr. Delgado, not the Plaintiff, which resulted in a proposed contract between Defendant and Mr. Delgado's alleged entity.[52] Further, as explained by the Affidavit of Shloime Nelken, the application received did not come from BizCash, but rather from Unlimited Funds, LLC.[53] Defendant had no knowledge of the alleged calls by BizCash and received no benefits from any actions taken by BizCash.[54]

Therefore, because Plaintiff's First Amended Complaint filed at Docket Number 7 fails to establish vicarious liability through establishment of agency, Callier has failed to meet his burden. Callier's failure to allege a prima facie case justifying the exercise of personal jurisdiction over Defendant mandates dismissal of the present case for lack of personal jurisdiction. Simply put, Defendant was not involved in the telephone calls allegedly received by Callier and, therefore, this matter should be dismissed.

## V. CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated herein, Defendant requests the Court dismiss Callier First Amended Complaint at Docket Number 7 for lack of personal jurisdiction. If the Court should determine that Plaintiff should be given an opportunity to engage in limited jurisdictional discovery, the Defendant would request the Court set strict limits and timelines for the same. Finally, Defendant requests relief for any and all such further and additional relief, at law or in equity, to which it demonstrates itself entitled.

---

[51] *Id.* at §4.06.
[52] DN 7 at ¶¶46-49.
[53] Ex. 1 at ¶¶11.
[54] Ex. 1 at ¶¶11; Ex. 1-C.

**Respectfully submitted,**

PADFIELD & STOUT, L.L.P.
100 Throckmorton Street, Suite 700
Fort Worth, Texas 76102
817-338-1616 – Telephone
817-338-1610 – Facsimile

*/s/ Brandon J. Gibbons*
Mark W. Stout
State Bar I.D. # 24008096
mstout@padfieldstout.com
Brandon J. Gibbons
State Bar I.D. # 24082516
bgibbons@padfieldstout.com
Jessica N. Alt
State Bar I.D. #24127981
jalt@padfieldstout.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

This is to certify that I have on May 19, 2025, I electronically served a true and correct copy of the foregoing pleading on all registered ECF users in this case.

/s/ Brandon J. Gibbons
Brandon J. Gibbons
