Exhibit 1-C

## ISO AGREEMENT

This ISO Agreement (the "**Agreement**") is made as of ___8/22/2023___ ("**Effective Date**") by and between Fox Capital Group, Inc. ("**FCG**"), with an office at 803 South 21ˢᵗ Avenue, Hollywood, Florida 33020 and the independent sales office, ___United Fundings, LLC___ ("**ISO**"), a ___DE___ [STATE] ___LLC___ [ENTITY TYPE], with an office located as set forth on the signature page of this Agreement. Each of the foregoing may be referred to individually hereinafter as a "**Party**" and collectively as the "**Parties**."

WHEREAS, FCG is in the business of funding merchant cash advances, revenue financing transactions and other forms of funding or financing transactions to businesses for business purposes (the "**Services**") and ISO is an entity engaged and experienced in the marketing and promotion of similar services and wishes to broker transactions to interested businesses ("**Merchants**", and individually, a "**Merchant**") on behalf of FCG on a non-exclusive basis;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency is hereby acknowledged, the Parties agree as follows:

1.  **ISO OBLIGATIONS.** ISO will market and promote the Services on behalf of FCG on a non-exclusive basis and will assist Merchants in completing and submitting applications to FCG, in a form provided by FCG or through FCG's webpage (a "**Merchant Application**"), together with supporting materials to be gathered by ISO from the Merchants. FCG will evaluate any Merchant Application submitted by ISO and, at its sole and absolute discretion, decide whether to accept or deny such Merchant Application or offer the Services or any related services to Merchant under any other terms. If FCG accepts the Merchant, it will provide the Merchant (or provide ISO to forward to Merchant and assist Merchant) with an agreement between Merchant and FCG ("**Merchant Agreement**") for the Merchant to review and sign. Each Merchant, assisted by ISO, shall comply in full with the provisions of FCG's Merchant Agreement and any requirements set forth in the rules and policies of FCG as they may exist from time to time. ISO will not be entitled to any Compensation (as defined in paragraph 4) for the submission of any Merchant Application until the Merchant is approved, executes a Merchant Agreement and is successfully funded by FCG. ISO will also be entitled to Compensation for a one-time renewal of a Merchant Agreement by a Merchant referred to FCG by ISO. If ISO submits a Merchant Application to FCG, but the Merchant does not execute a Merchant Agreement within 15 days of FCG providing the Merchant Agreement to ISO or the Merchant, ISO shall not receive Compensation in respect of that Merchant and FCG (or one of its other independent sales offices or agents) may directly solicit that Merchant to submit a Merchant Application or execute a Merchant Agreement. It is ISO's responsibility to ensure that any Merchant it referred to FCG executes a Merchant Agreement in a timely manner or ISO will forfeit any right or interest in the Merchant or to Compensation. ISO is responsible for communicating with the Merchants to solicit them to sign any renewal Merchant Agreement. If ISO does not timely reach out to Merchant for renewal prior to the Merchant's delivery of 90% of any payments due to FCG and FCG renews directly with the Merchant, ISO will be entitled to only 50% of any Compensation to which it would otherwise be entitled.

2.  **FCG AFFILIATES.** FCG in its sole discretion may forward or refer any Merchant Application received from ISO to any affiliated entity with FCG or with whom FCG has a referral relationship (an "**FCG Affiliate**"). If FCG forwards a Merchant Application to an FCG Affiliate, that affiliate will evaluate and, at its sole discretion, accept or deny such application. Under such circumstances, the FCG Affiliate that successfully enters a Merchant Agreement with the Merchant referred by ISO and funds the transaction shall be solely responsible to pay ISO any Compensation it would be entitled to under this Agreement, or, if ISO has an independent sales office or agent agreement with such FCG Affiliate, payments will be made by the FCG Affiliate only in accordance therewith and ISO will not be entitled to any Compensation under this Agreement.

3.  **MERCHANT APPLICATIONS AND AGREEMENTS.** When marketing the Services for FCG, ISO shall present to each Merchant only marketing and promotional materials, Merchant Applications or Merchant Agreements that have been provided by FCG or approved by FCG in advance in writing. ISO shall truthfully and correctly represent the nature of the Services and shall not misrepresent any product or service offered by FCG. By way of example, ISO shall not misrepresent to any Merchant that FCG can offer it a "loan" when ISO is promoting a merchant cash advance or revenue financing agreement. In the course of carrying out its obligations hereunder, ISO may not offer or present any material (printed, electronic or otherwise) to any prospective Merchant or any other third party that has not been supplied by FCG or an FCG Affiliate or approved by them in writing in advance. Only FCG or an FCG Affiliate is authorized to accept, ratify or finalize any Merchant Agreement. FCG or any FCG Affiliate, at its sole and absolute discretion, may decline to accept any Merchant for the Services for any reason whatsoever. ISO acknowledges and agrees that FCG or any FCG Affiliate may, at its sole discretion, amend the terms of a Merchant Agreement or the pricing that FCG offers to Merchants without prior notice or consent from ISO. ISO shall not hold out that it has any right to accept or decline a Merchant Application nor shall ISO hold out or represent to any third party that it has the right to accept or modify in any way any Merchant Agreement or bind FCG or any FCG Affiliate legally or otherwise. No agreement made by or through ISO shall be legally or otherwise binding on FCG unless and until accepted in writing by a duly authorized officer or agent of FCG or an FCG Affiliate. ISO shall be solely responsible for any and all expenses incurred by ISO in performance of ISO's services hereunder including, but not limited to, expenses related to any ISO employees or consultants and any taxes and tax reporting. Any separate agreements or arrangements made between ISO and any Merchant, and any representations made by ISO and any Merchant, shall not be binding upon or construed against FCG or an FCG Affiliate. ISO covenants and agrees that neither it, nor its employees, affiliates or representatives, shall require or collect directly from

Initials_____

or on behalf of any Merchant referred to FCG any fee, charge, commission or any other compensation or reimbursement in connection with such Merchant entering a Merchant Agreement with FCG, unless otherwise agreed in writing with FCG, which agreement shall be contingent upon ISO clearly disclosing to the Merchant, in writing, that ISO, not FCG, is charging the fee and that any fees not disclosed in the Merchant Agreement is not being charged by FCG. Unless so agreed with FCG, ISO agrees that its only compensation for submitting a Merchant Application or Merchant Agreement will be from FCG, as agreed in this Agreement. ISO, in dealing with any Merchants, shall at all times comport itself with the highest standards of business ethics and integrity and shall comply with all applicable federal, state or local laws concerning marketing of financial products to Merchants.

4.      **ISO COMPENSATION.** If FCG or an FCG Affiliate enters into a Merchant Agreement with a Merchant as a direct result of a Merchant Application solicited from Merchant by ISO, FCG or that FCG Affiliate that enters the Merchant Agreement will pay ISO in accordance with the ISO Compensation Schedule, set out in <u>**Exhibit A**</u> hereto ("**Compensation**"). Compensation will be due within fourteen (14) business days following the funding of the Merchant Agreement, unless the Parties agree otherwise in writing. FCG may amend Exhibit A at any time by giving ISO five (5) business days' prior notice (the "**Notice Period**") by e-mail, fax or first-class mail (any such notice a "**Notice of Revised Terms**"). A Notice of Revised Terms shall be deemed given on the date FCG sends the notice. Any revised terms will apply only to Merchants that ISO refers to FCG after the Notice Period. ISO's submission of a Merchant Application to FCG after the Notice Period will constitute acceptance of the revised terms.

5.      **ISO ACCOUNT AND ACH AUTHORIZATION.** Throughout the term of this Agreement, ISO irrevocably authorizes FCG and/or its agent(s) to deposit any Compensation owed to ISO into a designated bank account owned or within the control of ISO (the "**Account**") by automated clearing house (ACH) deposit, and to ACH debit from the Account any amounts owed to FCG including without limitation any clawed back Compensation, as described in paragraph 6 (together with applicable fees). ISO shall execute an ACH authorization form annexed as "**Exhibit B**" to designate the Account and authorize FCG to obtain electronic fund transfer services to and from the Account. In the event the Account becomes unavailable or ISO needs to change the Account for any reason, ISO shall obtain advanced approval from FCG for the change and execute a new ACH authorization form in favor of FCG prior to the first date of such unavailability or cessation of services.

6.      **CLAW BACK OF ISO COMPENSATION.** FCG or any FCG Affiliate that funds a Merchant referred by ISO shall have a lien against the Account for the full amount of any Compensation paid by that entity to ISO on account of the Merchant until the full purchased amount is delivered by Merchant to FCG or the FCG Affiliate. FCG or such FCG Affiliate is entitled to claw back any and all Compensation paid with respect to such Merchant in the event of a Merchant Default or in the event of any default by ISO under this Agreement (including without limitation violation of ISO's obligations under paragraphs 3, 4, 5, 8, 9, 10, 11, 12, 13 and 14), and to offset the claw back amount against any other Compensation to be paid by FCG or any FCG Affiliate to ISO with respect to the Merchant or any other Merchants. A "**Merchant Default**" for the purposes of this Agreement shall mean (a) the Merchant defaults under the terms of its Merchant Agreement or materially falls below expected performance (*e.g.*, not sufficient funds (NSF), blocks account, changes bank accounts, or "stacks" the Merchant Agreement, whether or not such default of failure to perform was caused by ISO) during the first forty (40) business days after funding, (b) the ISO brokers additional funding from an entity other than FCG or any FCG Affiliate for the Merchant (*i.e.*, stacking) without the prior consent of FCG prior to the Merchant delivering at least 90% of the purchased amount under the Merchant Agreement, or (c) ISO takes any action to solicit or encourage Merchant to breach any provision in the Merchant Agreement at any time prior to the full purchased amount being delivered by Merchant to FCG or the FCG Affiliate. If funds are not available in the Account, ISO must pay the claw back amount on demand. Additionally, ISO expressly and irrevocably authorizes FCG or any FCG Affiliate to debit by ACH any amount of Compensation owed to FCG or that FCG Affiliate from the Account without prior notice. In the event that ISO refuses to pay the claw back amount or takes or threatens any action to prevent FCG from debiting the Compensation from the Account, ISO hereby consents and agrees that FCG shall be entitled to any available equitable relief in accordance with paragraph 15. ISO also agrees that FCG shall be entitled to an award of reasonable attorneys' fees and costs in any proceeding to enforce the claw back provision in accordance with paragraph 16.

7.      **ISO ACKNOWLEDGEMENT.** ISO acknowledges that it is not the only or exclusive sales agent of the Services on behalf of FCG or any FCG Affiliates, who may, at their sole discretion, retain the services of many other independent sales offices or agents.

8.      **ISO IDENTIFICATION.** In the course of carrying out its obligations hereunder, ISO shall clearly identify itself with its own name and/or corporate name, and disclose to all third parties both in oral and written communications that it is an independent sales office and that it is promoting the Services of FCB, but is not an authorized agent to negotiate or enter into agreements on behalf of FCG or any FCG Affiliate. ISO agrees that its actions and the actions of its shareholders, affiliates, directors officers, employees, independent contractors, representatives, agents, principals and associates (collectively "**ISO Affiliates**") under or in connection with this Agreement shall be governed, controlled and directed by, and shall be in full compliance with, the terms of this Agreement, and that ISO shall not have any authority to act on behalf of FCG or any FCG Affiliate that is not specifically delineated by this Agreement. ISO acknowledges and agrees that FCG and the FCG Affiliates shall not be liable in any manner for any liability of ISO to any third party for any reason, including without limitation for any misrepresentations made by ISO concerning the nature of the Services. ISO shall be responsible to ensure that all ISO Affiliates are adequately trained to perform hereunder and comply with all provisions of this Agreement.

9.      **COMPLIANCE WITH STATE DISCLOSURE AND REGISTRATION LAWS.** ISO covenants that it is aware of and will comply with any state laws concerning disclosure and registration relating to the merchant cash advance, sales based financing or receipt purchasing industries for any states from which ISO solicits Merchant Applications, including without limitation California SB1235, Connecticut SB1032, Florida HB 1353, Georgia SB90, New York S5470, Utah SB183, and Virginia HB1027. Without

Initials 

limitation, this obligation includes:

a) Filing all registrations required for independent sales offices or brokers under Virginia HB1027 and Connecticut SB1032.

b) With respect to California SB1235 and New York S5470,

    i. ISO shall promptly familiarize itself with the requirements of the California SB1235 and the rules issued by the California Department of Financial Protection and Innovation thereunder (the **"California Rules"**), and New York S5470 and the rules issued by the New York State Department of Financial Services thereunder (the **"New York Rules"**), which impose certain disclosure requirements in connection with commercial financing transactions in the amount of $500,000 or less (in California) and $2,500,000 (in New York), including without limitation to provide a prescribed disclosure form (a **"Disclosure"**) to any merchant applicant that applies from one of those states (a **"Covered Merchant"**) at the time of making an initial written offer of commercial financing, whether that offer is made by the provider (*i.e.*, FCG) or by a broker (*i.e.*, ISO) and thereafter obtaining the Covered Merchant's signature on such Disclosure. ISO shall also seek advice from regulatory counsel or compliance officers to ensure its compliance.

    ii. For purposes of this Agreement, a Covered Merchant shall include a Merchant that makes any written representation that its business is principally directed or managed from California or New York, provides a business address in California or New York, or is incorporated in California or New York.

    iii. ISO represents, warrants and covenants that, before an executed Disclosure is received by FCG from a Covered Merchant, ISO shall not include in any written communication to a Covered Merchant in connection with a specific commercial financing offer, based upon information from or about the Covered Merchant, (1) a periodic payment amount, irregular payment amount or financing amount, and (2) any rate, price or cost of financing (including, without limitation, any total repayment amount) (collectively, "triggering terms"). **"Information from or about the recipient"**, as used herein, includes information about the Covered Merchant that informs the provider's quote to the Covered Merchant, such as the Covered Merchant's financial or credit information, but does not include the Covered Merchant's name, address or general interest in financing. ISO further agrees to supervise, train and monitor its employees, representatives and agents regarding this prohibition against including triggering terms in written communications to recipients before a Disclosure is provided to the Covered Merchant.

    iv. ISO shall strictly comply with all written policies and procedures issued by FCG from time to time with respect to compliance with California SB1235, the California Rules, New York S5470 and the New York Rules. ISO shall not provide a specific single written commercial financing offer to a Covered Merchant until authorized by FCG to do so after FCG has obtained a signed Disclosure and FCG gives ISO written confirmation that FCG has provided the disclosures to the Covered Merchant directly or through some other means.

    v. If, and only if, FCG asks ISO to provide a Covered Merchant with a Disclosure instead of FCG providing the Disclosure directly to the Covered Merchant, the following procedures shall apply.

        • Upon receipt of a copy of a Disclosure from FCG in connection with a specific commercial financing offer to a Covered Merchant, and before ISO communicates the offer to the Covered Merchant, ISO shall promptly transmit the unaltered Disclosure received from the FCG to the Covered Merchant and urge the Covered Merchant to promptly review it.

        • Within two (2) business days of the date that ISO transmits Disclosure to a Covered Merchant, ISO shall provide evidence of transmission of the Disclosure to FCG in form and substance acceptable to FCG, including the time of transmission of the Disclosure to the Covered Merchant. This may include, without, forwarding the email transmission or DocuSign transmission, with all original attachments from the email.

        • If the commercial financing transaction related to the disclosures is expected to be consummated, ISO shall cause the Covered Merchant to sign a copy of the Disclosure (including by a natural person authorized to sign in the case of a Covered Merchant that is a legal entity) and shall immediately transmit the signed copy to FCG in a manner acceptable to FCG. ISO acknowledges that the Rules provide that a commercial financing transaction shall not be consummated (and subject to satisfaction of all other conditions to consummation) unless and until FCG has obtained a signed copy of the Disclosure related to the transaction.

    vi. ISO acknowledges and agrees that FCG may take any necessary or appropriate steps to confirm ISO's compliance with its obligations under this section, including without limitation investigation of facts that may indicate that ISO has not provided Disclosures to one or more Covered Merchant. ISO further acknowledges and agrees that FCG may immediately terminate the Agreement in the event FCG in its sole discretion finds that ISO has not complied with its obligations under this section, in which event Funder shall not be liable to pay any further Compensation and shall be entitled to be repaid any compensation paid in respect of Covered Merchants to whom ISO did not comply with this section.

    vii. With respect to Florida HB 1353 and Georgia SB90, ISO represents, warrants, and covenants that it will not (i) assess, collect or solicit an advance fee from a Merchant to provide services as a broker (other than soliciting the Merchant to pay for actual services necessary to apply for a commercial financing transaction, such as a credit check of an appraisal of security if such payment is made be check or money order payable to a party independent of ISO), (ii) make or use any false or misleading representation or omit any material fact in the offer or sale of services by ISO, or engage in an act that operates or would operate as a fraud or deception upon any Merchant in connection with the offer or sale of the ISO's

Initials____  ____

services, (iii) make or use any false or deceptive representation in business dealings, or (iv) (for Florida only) offer the services of a broker in any advertisement without disclosing the actual address and telephone number of the business of the broker and the address and telephone number of any forwarding service the broker may use.

c) Complying with any similar state laws or rules that have been passed or may in the future be passed, such as in the States of Illinois, Georgia or Maryland.

d) ISO acknowledges that it will be required to indemnify FCG for any damages FCG's incurs as a result of ISO's failure to comply with state disclosure laws.

10.    **ADDITIONAL OBLIGATIONS OF ISO.** ISO covenants, represents and warrants that during the term of this Agreement and so long as it is bound by the non-interference provisions hereof, it shall: (a) comply with any and all policies and guidelines established by FCG; (b) where appropriate, inform Merchants that they are required to change credit card processors or bank accounts in order to participate in the Services offered by FCG; (c) accurately describe the Services and the contents of the Merchant Agreement to Merchants; (d) immediately inform FCG of any changes that become known to ISO in the address, bank account, ownership or business or operations of itself or of any Merchant referred by ISO to FCG; (e) deliver to FCG all documents required as part of a Merchant Application together with each application, including, without limitation, the Merchant Application, Merchant Agreement, voided check, banks statements, credit card processor statements, and any other documents FCG requires or believes is desirable for review and funding approval; (f) maintain a ratio of less than 10% defaults on funded Merchants; (g) not use any promotional material for FCG's services without prior written consent from FCG, including without limitation any logo, trademark or mark of any kind of FCG; (h) not cause or solicit a Merchant to breach a Merchant Agreement, change its bank account, terminate or alter its credit card processing to another bank or processor, divert receivables to a different account than the one designated in the Merchant Agreement, stop payment or take any other action which would threaten or cause the Merchant's receivables to diminish, or hinder in any way FCG's ability to collect any amounts that FCG is entitled to receive from Merchant; (i) not submit false, faulty or fraudulent information or documentation in support of any Merchant Application or Merchant Agreement (or which ISO has any reason to believe is false, faulty or fraudulent) or withhold from FCG any information ISO has obtained from or about Merchant that ISO believes or has reason to believe would be material to FCG's decision to enter into a Merchant Agreement, including without limitation any information that would lead ISO to suspect that any information or documentation is false, faulty or fraudulent in any way; (j) not engage in any debt settlement, debt consolidation, merchant cash advance settlement, merchant cash advance relief or any other business or service that consults or advises Merchants with respect to defaulting on (or with respect to an existing default on) their merchant cash advance from any purchaser of receivables, or refer, directly or indirectly, any Merchant that entered into a Merchant Agreement with FCG to any debt settlement company or attorney; (k) not solicit, facilitate or cause, directly or indirectly, a Merchant to accept any merchant cash advance or loan or any other further form of financing or purchase of receivables in any form that relates to or involves the Merchant's receivables with any party other than FCG prior to Merchant's delivery to FCG of any and all payments due to FCG under the Merchant Agreement (the practice commonly known as "stacking"), whether entered prior to, at the same time, or after a Merchant enters the Merchant Agreement, and (l) not market or promote the Services to individuals for consumer, family or household purposes or submit any Merchant Application knowing that a Merchant intends for the funds to be used for such purposes.  FCG may share information regarding this Agreement or ISO or any ISO Affiliate with any third party in order to determine whether ISO is in compliance with this Agreement.

11.    **ISO REPRESENTATIONS.** ISO represents and warrants that as of the Effective Dates and throughout the term of this Agreement: (a) ISO is either (i) an individual or (ii) a corporation or limited liability company organized, validly existing and in good standing under the laws of the State where its principal office is located; (b) if ISO is an entity, ISO has full authority and corporate power to enter into this Agreement and to perform its obligations under this Agreement; (c) ISO's performance of this Agreement will not violate any applicable law or regulation or any agreement to which it may now be bound; (d) this Agreement represents ISO's valid obligation and is fully enforceable against it; (e) ISO is not a party to any pending litigation that would have an impact on this Agreement and has never been fined or penalized by Visa, MasterCard, NACHA or any other association in the credit, payments or banking industry; (f) ISO is not on the Member Alert to Control High-Risk merchants list of MasterCard or any other similar list; (g) ISO is properly licensed and qualified to transact business in all jurisdictions where it conducts activities contemplated by this Agreement, and specifically, if required by applicable law, ISO maintains any lender's and/or broker's license required to conduct its activities under this Agreement; and (h) ISO conducts its activities in compliance with all state and federal credit laws including the Equal Credit Opportunity Act and Truth in Lending Act and regulations issued thereunder.

12.    **NON-SOLICITATION.** Except as otherwise provided in this Agreement, throughout the term of this Agreement and for two (2) years thereafter, neither ISO nor any ISO Affiliate, shall directly or indirectly, on ISO's behalf or on behalf of any other person or entity: (i) solicit any Merchant referred by ISO or any ISO Affiliate to FCG or any FCG Affiliate, or whose identity appeared on any Merchant list to which ISO or any ISO Affiliate was given access, to terminate the Merchant's contractual relationship with FCG or otherwise interfere in any manner whatsoever in the relationship between the Merchant and FCG or any FCG Affiliate; or (ii) solicit any employee, contractor, agent or independent sales office of FCG or any FCG Affiliate with whom ISO or its affiliate had significant interaction (whether oral, written, telephonic or electronic) within three months preceding the termination of this Agreement, or whose identity appeared on any employee, contractor, agent or independent sales office list to which ISO or any ISO Affiliate was given access, or interfere in any manner whatsoever with their relationship with FCG.

13.    **CONFIDENTIAL INFORMATION. "Confidential Information,"** as used in this Agreement, means all proprietary, secret or non-public information or data relating to either Party or any of the FCG Affiliates, and their Merchants, affiliates, operations, employees, products or services, clients, customers or potential customers.  Confidential Information shall include Merchant or customer lists, card member account numbers, pricing information, computer access codes, instruction and/or procedural manuals,

Initials

and the terms and conditions of this Agreement. Information shall not be considered Confidential Information to the extent, but only to the extent, that such information is: (i) already known to the receiving party free of any restriction at the time it is obtained; (ii) subsequently learned from an independent third party free of any restriction and without breach of this Agreement; (iii) becomes publicly available through no wrongful act of the receiving party; (iv) is independently developed by the receiving party without reference to any Confidential Information of the other; or (v) is required to be disclosed by law.

14.     **USE AND NONDISCLOSURE OF CONFIDENTIAL INFORMATION.** Each Party acknowledges that it may directly or indirectly disclose Confidential Information to the other party in the course of negotiation of and performance of this Agreement. All such Confidential Information disclosed hereunder shall remain the sole property of the disclosing party (or other third party), and the receiving party shall have no interest in the Confidential Information, or rights with respect thereto, except as set forth herein. Each Party agrees to treat such Confidential Information with the same degree of care and security as it treats its most confidential information. Each Party may disclose such Confidential Information to employees and agents who require such knowledge to perform services under this Agreement. Except as otherwise contemplated by this Agreement, neither Party shall disclose the Confidential Information of the other Party to any third party without the prior written consent of the disclosing Party, and the duty of confidentiality created by this section shall survive any termination of the Agreement.

15.     **TERM AND TERMINATION.** The term of this Agreement shall begin on the Effective Date and will continue for an initial term of one (1) year. After the initial term, this Agreement shall automatically renew for successive one (1) year terms unless terminated by either party upon five (5) days written notice. In the event of such termination, ISO shall be entitled to all such Compensation that had been earned or accrued as of the date of the termination. This Agreement (and any Compensation owed by FCG to ISO) may be terminated immediately by FCG upon ISO's breach of any obligation, covenant, representation or warranty set forth in this Agreement, or if ISO or any of ISO's Affiliates causes a detrimental effect to FCG, any FCG Affiliate, or Merchants (a "**termination for cause**"). In the event of a termination for cause, in addition to all other rights and remedies, FCG shall have no obligation to pay any further Compensation to ISO.

16.     **EQUITABLE REMEDIES.** Without limitation of any other provision in this Agreement, in the event that ISO breaches or threatens to breach any of the covenants, representations and warranties in paragraphs 6, 8, 9, 10, 11, 12 and 13, ISO hereby consents and agrees that FCG shall be entitled to the *ex parte* (without advanced notice) entry of a preliminary or permanent injunction, temporary restraining order, prejudgment attachment or other equitable relief, including without limitation to protect against such breach or threatened breach, from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security with respect to obtaining or continuing any injunction or temporary restraining order. Further, ISO releases FCG and the FCG Affiliates from, and waives any claim for, damages that may result to ISO from FCG or the FCG Affiliates obtaining any equitable relief pursuant to this Agreement. If a bond or other security is required, ISO consents that its damages would be *de minimis* and that the amount of the bond or security shall be no more than $500. ISO agrees that the aforementioned equitable relief shall not diminish any other right or remedy that the FCG Affiliates may have at law or in equity to enforce the provisions of this Agreement. ISO agrees that any such equitable relief shall be in addition to, not *in lieu* of, legal remedies, monetary damages or other available forms of relief.

17.     **ATTORNEYS' FEES.** ISO agrees that FCG and any FCG Affiliate shall be entitled to an award of reasonable attorneys' fees and costs in any proceeding (arbitral or judicial) to enforce this Agreement or for any other dispute arising out of or relating to this Agreement or the relationship between the Parties. The amount of court costs and attorneys' fees under this section or under any other provision of this Agreement shall include the amount of costs and fees incurred in making an application for costs and fees (so-called "fees on fees"), on appeal or in bankruptcy court. ISO consents to pay the amount of $15,000 as liquidated damages, and not as a penalty, for FCG's successful application for injunctive relief under paragraph 15, which the Parties agree is a reasonable estimate of the costs for such an application (which shall not be a limitation on the overall amount of attorneys' fees and costs FCG shall be entitled to recover in any action). The amount of liquidated damages shall be awarded to FCG upon prevailing on the initial application for injunctive relief, without the need for FCG to prevail in the ultimate judgment in the proceeding, and ISO consents to the court or tribunal including the liquidated amount in the total amounts of ISO's funds to be stayed or attached pursuant to its order granting equitable relief.

18.     **WAIVER OF SEPARATE ENTITY RULE.** ISO waives, to the maximum extent permitted by law, the separate entity rule, such that any notice, demand, lien, levy, prejudgment attachment, postjudgment attachment, turnover order, restraining notice or other process served upon any branch, department or unit of ISO's bank, third-party payor, account debtor or other garnishee shall be deemed served regardless of the branch, department or unit served anywhere in the world, and will subject to attachment and collections any and all assets or other interests held by or for the benefit of ISO, regardless of the location of the assets or other interests anywhere in the world.

19.     **ASSIGNMENT; SUCCESSORS; AMENDMENTS.** ISO may not assign, whether voluntarily or by operation of law, any right or obligation under this agreement to any third party without prior written consent of FCG, including an assignment by virtue of a sale of ISO's business, except with prior permission of FCG. Any purported assignment in violation of the foregoing shall be deemed null and void. FCG may assign its rights and obligations hereunder with notice to the ISO. This Agreement shall be binding upon and inure to the benefit of the Parties' respective successors, permitted assigns, heirs, executors, administrators and legal representatives. With the exception of amendments to the Compensation which may be made at the discretion of FCG, this Agreement may be amended only by a written agreement executed by both parties hereto.

20.     **NOTICES.** Unless otherwise specified herein, any notices or other communications required or permitted hereunder shall be sufficiently given if in writing and delivered personally or sent by internationally recognized overnight courier,

Initials_____

registered or certified mail (postage prepaid with return receipt requested) to the address for FCG or ISO set forth on the signature page of this Agreement. Such notices or other communications shall be deemed received (i) on the date delivered, if delivered personally, (ii) on the business day after being sent by a recognized overnight air courier, or (iii) five days after being sent, if sent by first class registered or certified mail, return receipt requested. ISO is obligated to send notice to FCG of any change of address.

21.    **WHOLE AGREEMENT.** This Agreement, including all schedules, exhibits and attachments thereto, including any authorization agreement for direct deposit and direct payments, set forth the entire agreement and understanding of the Parties hereto in respect of the subject matter contained herein, and supersedes all prior agreements, promises, covenants, arrangements, communications, representations or warranties, whether oral or written by any officer, partner, employee or representative of any party hereto.

22.    **RELATIONSHIP OF PARTIES.** ISO is a contractor of FCG hereunder and the Parties' relationship shall not be construed as any form of employer/employee relationship, joint venture, partnership or agency. FCG intends no contract of employment, express or implied, with either ISO or any ISO Affiliates; neither ISO nor any ISO Affiliate has obtained any right to employment or compensation as an employee or any other benefits of an employee by way of this Agreement. ISO agrees that it shall be solely responsible for the purchase and maintenance of employment or workers compensation insurance coverage and reporting and payment of applicable taxes related to its employees and that FCG and the FCG Affiliates shall have no responsibility for any such liabilities.

23.    **LIMITATION OF LIABILITY.** FCG and any FCG Affiliate shall not be liable hereunder to ISO or any ISO Affiliate or third party for any liquidated, indirect, consequential, exemplary or incidental damages (including damages for loss of business profits) and has been advised of the possibility of such damages. FCG's or any FCG Affiliate's liability to ISO for any claims arising out of or relating to this Agreement shall be limited to the Compensation due in accordance with the terms of this Agreement.

24.    **INDEMNIFICATION.** ISO will indemnify and hold harmless FCG and the FCG Affiliates from and against any claims, suits, demands, damages, judgments, fines, penalties, costs, liabilities and expenses (including reasonable attorneys' fees and costs) suffered or incurred by any FCG and the FCG Affiliates arising out of or relating to the the gross negligence, willful misconduct or bad faith of ISO with respect to providing the Services or any other matters relating to or arising out of this Agreement or (any violation by ISO of applicable laws in the performance of its obligations hereunder, including without limitation any disclosure obligations such as the California Rules or the New York Rules.

25.    **THIRD PARTY BENEFICIARIES.** Each of the FCG Affiliates is intended to be a third-party beneficiary under this Agreement and may enforce this agreement against ISO. Nothing in this Agreement, express or implied, is intended to confer or shall be deemed to confer any rights or remedies upon any persons or entities not parties to this Agreement, including any Merchants, other than the FCG Affiliates (including the ISO Affiliates).

26.    **SEVERABILITY.** If any provision hereof is for any reason determined to be invalid, such provision shall be deemed modified so as to be enforceable to the maximum extent permitted by law consistent with the intent of the parties as herein expressed, and such invalidity shall not affect the remaining provisions of this Agreement, which shall continue in full force and effect.

27.    **GOVERNING LAW, VENUE AND JURISDICTION.** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regards to any applicable principles of conflicts of law. Any suit, action, or proceeding arising out of or relating to this Agreement or the transaction contemplated herein or the interpretation, performance, or breach hereof, shall be instituted in any federal or state court sitting in Broward County in the State of Florida (the "**Acceptable Forums**"), provided that FCG may institute suit in another forum. ISO agrees that the Acceptable Forums are convenient to it, and submits to the personal jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue in the Acceptable Forums. Should a proceeding be initiated by ISO in any other forum, ISO waives any right to oppose any motion or application made by FCG to dismiss such proceeding, to remove and/or transfer the proceeding to an Acceptable Forum, and for an anti-suit injunction against such proceeding (which FCG may make in the Acceptable Forums). ADDITIONALLY, ISO WAIVES PERSONAL SERVICE OF ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION AND AGREES THAT SERVICE OF SUCH DOCUMENTS SHALL BE EFFECTIVE AND COMPLETE IF MAILED BY CERTIFIED MAIL TO THE ADDRESS LISTED FOR ISO ON THE LAST PAGE OF THIS AGREEMENT WITH A COURTESY COPY BY EMAIL. ISO WILL THEN HAVE 30 CALENDAR DAYS AFTER SERVICE IS COMPLETE IN WHICH TO RESPOND.

28.    **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION, OR PROCEEDING ON ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT OF THE TRANSACTION CONTEMPLATED HEREIN. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

29.    **ACKNOWLEDGEMENTS.** By signing below, the Parties acknowledge that they have read, understand, and accept each of the terms and conditions of this Agreement and that they are entering into this Agreement knowingly, voluntarily and without coercion or duress. The Parties acknowledge that they have been given a reasonable amount of time to consider this Agreement, have been advised to seek counsel as to the meaning and consequences of this Agreement, have been so advised by counsel as to the meaning and consequences of this Agreement or have voluntarily waived procurement of counsel. The Parties represent that they have not relied on any representations, promises or agreements of any kind made to any of them in connection with the Parties' decision to accept and sign this Agreement, except those expressly set forth in this Agreement. The Parties further represent that they have no physical or mental impairment of any kind that has interfered with their ability to read and understand the meaning of this agreement

Initials_____

and that they are not acting under the influence of any medication or mind-altering chemical of any type. ISO acknowledges that the restrictions contained herein do not impose an undue hardship on ISO and are reasonable and necessary to protect FCG, including its relationships with former, current, and prospective clients, its other professional relationships, its goodwill and its confidential information.

30.    **SIGNATURES.**  This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together, shall constitute one and the same agreement.  Facsimile, email, PDF or digital signatures hereon shall be deemed acceptable for all purposes.  This Agreement shall be valid and in force even if it is not initialed.

31.    **INDIVIDUAL LIABILITY; GUARANTY.** The individual executing this Agreement on behalf of ISO (a) is hereby individually bound by each of the terms of this Agreement, and (b) irrevocably, absolutely and unconditionally guarantees to FCG prompt, full, faithful and complete performance and observance of all of ISO's obligations under this Agreement, and unconditionally covenants to FCG that if default or breach shall at any time be made by ISO, such individual shall well and truly pay or perform (or cause to be paid or performed) such obligations and pay all damages and other amounts stipulated in this Agreement with respect to the non-performance of ISO's obligations, or any of them, and (c) shall be held jointly and severally liable with ISO for all obligations, representations and warranties of ISO under this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

**FOX CAPITAL GROUP, INC.**

By: _____

Name: _____

Title: _____

Date: _____

Address:

803 South 21st Avenue,
Hollywood, Florida 33020

Phone:

_____

For: United Fundings, LLC
_____

By: *Jeff Tiller*
DocuSigned by:
B480B455B7B5476...
_____

Name:
Jeff Tiller
_____

Title:
Director
_____

Date:
8/22/2023
_____

Address:
800 Third Ave, 15th Floor
_____

New York
_____

Phone:
███████████████████████████

Email:
███████████████████████████

**EXHIBIT A – ISO COMPENSATION SCHEDULE**

[redacted]

[redacted]

[redacted]

Initials JT

## EXHIBIT B - ACH AUTHORIZATION FORM

Business Name: United Fundings, LLC

DBA: United Fundings

Address: █████████████████████

Email: ████████████████

Business Owner Name: Jeff Tiller

Business Owner Date of Birth: ██ ██ ████

FEIN: NA          SSN#: ███ ██ ████

**Account Information:**

Bank Name: ██████████

Branch (if applicable): ████████

Bank ABA or Transit Routing Number: █████████

Bank Account Number: ████████

Please check one: ☒ Checking Account   ☐ Savings Account

### AUTHORIZATION

I authorize Fox Capital Group, Inc. ("**FCG**") and its affiliates to deposit or debit my compensation and any claw backs as set forth in the ISO Agreement between FCG and myself or my business ("**ISO Agreement**") to/from the bank account specified above at such times as compensation is earned or a claw back is required. Should a transaction be returned, I further authorize FCG to debit the above mentioned account for non-sufficient fund fees according to applicable State Law. I understand that this authorization is to remain in full force and effect until FCG has received written notification from me of its termination at least fifteen (15) business days prior to the payment due date. I further understand that canceling my ACH authorization does not relieve me of the responsibility of paying my account in full, and that if I cancel or revoke this authorization before any remaining debt is paid in full, FCG may take additional actions including legal actions to secure the debt. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law.  I certify that I am an authorized user of this bank account and will not dispute transactions with my bank so long as the transactions correspond to the terms of the ISO Agreement.

Signature:           Date: 8/22/2023

DocuSigned by:
*Jeff Tiller*
B480B455B7B5476...

<ATTACH BLANK CHECK AND COPY OF PHOTO IDENTIFICATION>